IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RSUI INDEMNITY COMPANY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: |
| WORLDWIDE WAGERING, INC., WILLIAM H. JOHNSTON, JR., WILLIAM H. JOHNSTON, III, STEVEN E. ANTON, F. PHILLIP LANGLEY, LESTER H. MCKEEVER, and STEPHEN SWINDAL | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

RSUI Indemnity Company ("RSUI"), by and through its attorneys, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and 2202 against Defendants, World Wide Wagering, Inc., William H. Johnston, Jr., William H. Johnston, III, Steven E. Anton, F. Phillip Langley, Lester H. McKeever and Stephen Swindal, states as follows:

1. RSUI Indemnity Company is an insurance company seeking a declaratory judgment that no coverage exists under RSUI's Directors and Officers Liability Policy No. NHP656876 ("the Policy," attached as Exhibit A) for a lawsuit filed in December 2016 against World Wide Wagering, Inc. ("WWW") and various directors and officers of WWW, captioned *Chatz v. World Wide Wagering, Inc., et al.*, United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, No. 14-45711 (the "Underlying Lawsuit") (The complaint in the Underlying Lawsuit is attached as Exhibit B). The Underlying Lawsuit was brought by plaintiff Barry A. Chatz, as Trustee of the Creditor Trust created by operation of the Amended Joint Liquidation Plan, in the Chapter 11 bankruptcy proceeding regarding Balmoral Racing

1

Club, Inc. ("Balmoral") and Maywood Park Trotting Association ("Maywood") (collectively "Debtors"). Aside from WWW, the defendants named in the Underlying Lawsuit that seek coverage from RSUI under the Policy include William H. Johnston, Jr., William H. Johnston, III, Steven E. Anton, F. Phillip Langley, Lester H. McKeever and Stephen Swindal ("Individual Defendants").

**Parties**

2. Plaintiff RSUI is an insurance company that is organized and exists pursuant to the laws of New Hampshire, with its principal place of business in the state of Georgia.

3. Upon information and belief, Defendant WWW is a corporation organized and existing by and under the laws of the State of Delaware, with its principal place of business at 8600 W. North Avenue, Melrose Park, Illinois.

4. Upon information and belief, William H. Johnston, Jr. is a citizen and resident of Florida who resides at 110 Andros Road, Key Largo, Florida. Mr. Johnston, Jr. is or was the Chairman of WWW's Board of Directors.

5. Upon information and belief, William H. Johnston, III is a citizen and resident of Illinois who resides at 7565 Woodland Lane, Burr Ridge, Illinois. Mr. Johnston, III was or is Secretary and a Director of WWW, and Chief Executive and Chief Operating Officer of Coast to Coast Food Service, Ltd., which provides food/beverage and off-track betting services to Debtors ("Coast to Coast").

6. Upon information and belief, Steven F. Anton is a citizen and resident of Michigan who resides at 23719 Rowe, Dearborn, Michigan. Mr. Anton served as a Director of WWW and as Director and Controller of Maywood.

7. Upon information and belief, F. Phillip Langley is a citizen and resident of Illinois

who resides at 382 Red Bud Court, Frankfort, Illinois. Mr. Langley served as Treasurer and a Corporate director of WWW and Corporate Director of both Maywood and Balmoral.

8. Upon information and belief, Lester H. McKeever is a citizen and resident of Illinois who resides at 4950 South Chicago Beach Drive, 9A, Chicago, Illinois. Mr. McKeever served as a Corporate Director of WWW and Secretary of both Maywood and Balmoral.

9. Upon information and belief, Stephen Swindal is a citizen and resident of Florida, who resides at 918 Hemingway Circle, Tampa, Florida. Mr. Swindal served as a Director of WWW, Balmoral and Maywood, and as Coast to Coast's Treasurer.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), because there is complete diversity between RSUI and the Defendants, and the amount in controversy, exclusive of interest, exceeds $75,000.

11. This Court has personal jurisdiction over the Defendants because WWW has its principal place of business in Illinois and the Defendants regularly conduct business in Illinois.

12. This Court has the power to issue a declaratory judgment regarding RSUI's rights and obligations under the Policy under 28 U.S.C. §§ 2201 and 2202.

13. This Court is a proper venue under 28 U.S.C. § 1391(b)(1), because WWW has its principal place of business in this judicial district.

14. As a result of a dispute with Defendants regarding the existence of coverage for the claims made against Defendants, there is an actual case or controversy between the parties.

## Background of Underlying Litigation

15. The complaint in the Underlying Lawsuit alleges, at its outset, that Defendants "raided the Debtors knowing that Debtors were at risk of a massive judgment," in a matter

captioned *Empress Casino Joliet Corp., et al. v. Rod Blagojevich, et al.*, Case No. 09 C 3585, United States District Court, N.D. Illinois, Eastern Division, (the "Riverboat Matter"). (Ex. B, p. 4, ¶ 3).

16. The Riverboat Matter was filed in June 2009 by four riverboat gambling casinos located in Illinois against, among others, the Debtors and John Johnston (owner of Debtors). (*Id.*)

17. The jury in the Riverboat Matter found that John Johnston agreed to pay the former governor of Illinois, Rod Blagojevich's, campaign fund $100,000 in exchange for his support and signature on legislation that would require the riverboat casinos to pay 3% of their gross revenue to a fund to benefit the Illinois horseracing industry. (Ex. B., p. 5, ¶ 4).

18. After trial in the Riverboat Matter, the jury awarded approximately $77.8 million against defendants, plus $4 million against John Johnston in punitive damages. (*Id.*)

19. The jury's verdict was entered on December 10, 2014 and Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, on December 24, 2014. The judgment was later reduced to $25.9 million. (Ex. B., p. 5, ¶ 5).

20. The Underlying Lawsuit alleges that Defendants "engaged in a deliberate scheme to manipulate Debtors' assets so as to conceal the Debtors' assets from the Judgment Creditors [riverboat casinos] and other creditors." In doing so, Defendants allegedly "willfully disregarded their obligations to Debtors…knowing that the Debtors were losing money and needed every available dollar to sustain their businesses and pay their creditors…[t]hey also did so in anticipation of the Judgment." (Ex. B, pp. 5-6, ¶ 6).

21. The Trustee seeks recovery of more than $21 million and pleads causes of action for fraudulent transfers to Defendants, preferential transfers to certain Defendants, damages

certain defendants caused Debtors in breach of fiduciary duties owed to Debtors, and alter ego/piercing the corporate veil against certain Defendants. (Ex. B., p. 2, ¶ 1).

## The RSUI Insurance Policy

22.    RSUI issued the Policy to World Wide Wagering, Inc. for the policy period April 17, 2014 to April 17, 2017. (Ex. A, Directors and Officers Liability Policy Declarations.)

23.    Subject to all its terms and conditions, the Policy provides Directors and Officers Liability insurance to World Wide Wagering, Inc. (Ex. A, p. 1.)

24.    The Policy provides a $1,000,000 aggregate limit of liability for Claims[1] first made during the policy period, subject to a $25,000 retention per Claim. (Ex. A, Directors and Officers Liability Policy Declarations.)[2]

25.    The Insuring Agreement of the RSUI Policy states:

    A.    With the Insured Person that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with…this policy, the Insurer will pay on behalf of such Insured Person all Loss such Insured Person is obligated to pay, except and to the extent that the Insured Organization is required or permitted to indemnify such Insured Persons.

    B.    With the Insured Organization that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with…this Policy, the Insurer will pay on behalf of the Insured Organization all Loss for which the Insured Organization is required or permitted to indemnify the Insured Person.

    C.    With the Insured Organization that if a Claim for a Wrongful Act

---

[1] Capitalized and bolded terms are specifically defined in the Policy.
[2] The Policy also contains an endorsement which provides a $1 million separate and additional limit, available solely for Loss resulting from a Claim against any Insured Persons covered under the Policy (subject to Insuring Agreement A), but RSUI shall only have an obligation under this additional limit if the primary $1,000,000 limit of the Policy, as well as any insurance available that is specifically excess of the Policy, are completely exhausted by payment of Loss thereunder. (Ex. A., RSG 2041430407).

       is first made against the Insured Organization during the Policy Period and reported in accordance with…this Policy, the Insurer will pay on behalf of the Insured Organization all Loss the Insured Organization is legally obligated to pay.

(Ex. B., Sec. I.)

26. Section III of the Policy defines "Claim" as follows:

B. Claim, either in the singular or the plural, means:

    **1.** A written demand for monetary or non-monetary relief;

    **2.** A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
      **a.** Service of a complaint or similar pleading;
      **b.** Return of an indictment (in case of a criminal proceeding); or
      **c.** Receipt of a notice of charges…

(Ex. A, Sec. III.B.1-2.)

27. The Policy defines "Loss" as follows:

K. Loss means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and Defense Expenses. Loss (other than Defense Expenses) shall not include:

      \* \* \*

    9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

(Ex. B, Sec. III.K.)

28. The Underlying Lawsuit was tendered to RSUI for coverage on December 20, 2016, and constitutes a Claim under the Policy.

29. The following exclusion was endorsed to the Policy ("Specific Litigation Exclusion"):

**EXCLUSION – SPECIFIC LITIGATION**

The Insurer shall not be liable to make any payment for Loss arising out of or in

6

connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly, in whole or in part, the following litigation:

Riverboat matter, claim #233457 on Chubb loss runs dated 4/8/2014.

(Ex. A, RSG 2060780204).

30. The Underlying Lawsuit "aris[es] out of," is "based upon," and/or "attributable to," "directly or indirectly," "in whole or in part," the Riverboat Matter.

31. Accordingly, based on the allegations of the Underlying Lawsuit, the Specific Litigation Exclusion applies to completely bar coverage for the Underlying Lawsuit, and RSUI has no duty to defend Defendants with respect to the Underlying Lawsuit.

32. In addition, the Policy's definition of Loss specifically excepts matters that may be uninsurable under the law. (Ex. A, Sec. II.K.9.)

33. The Trustee alleges in the Underlying Lawsuit that he seeks return of the monies the Defendants "improperly siphoned and received from the Debtors through fraudulent conveyances and preferential transfers and in breach of their fiduciary duties." (Ex. B, Par. 6.)

34. Restoration of ill-gotten gains is not insurable Loss under the law.

35. Accordingly, the damages sought by the Trustee in the Underlying Lawsuit do not constitute "Loss" under the Policy and RSUI has no duty to defend Defendants with respect to the Underlying Lawsuit.

36. On January 20, 2017, RSUI disclaimed coverage for the Underlying Lawsuit and requested that Defendants enter into a Waiver/Withdrawal Agreement to avoid the need for coverage litigation. (A copy of the January 20, 2017 letter is attached as Exhibit C.)

37. RSUI stated in the January 20, 2017 letter that in the event RSUI did not receive either additional information relevant to the coverage issues outlined therein or a signed

Waiver/Withdrawal Agreement by February 6, 2017, RSUI would file a corresponding declaratory judgment action as required by Illinois law. (Ex. C, p.5.)

38. RSUI did not receive a response from Defendants as of February 6, 2017.

## COUNT I

### RSUI Has No Duty to Defend Under the Policy

39. RSUI incorporates by reference paragraphs 1-38 as if fully set forth in this count.

40. An actual, justiciable controversy has arisen over whether the Policy requires RSUI to defend World Wide Wagering, Inc. and the Individual Defendants for the Underlying Lawsuit.

41. The Underlying Lawsuit is a Claim that arises out of, is based upon, or attributable to, directly or indirectly, in whole or in part, the Riverboat Matter. Accordingly, the Underlying Lawsuit falls squarely within the Specific Litigation Exclusion.

42. Therefore, because the Underlying Lawsuit is not covered by the Policy, RSUI owes no duty to defend WWW or the Individual Defendants.

43. In addition, the definition of Loss specifically excepts matters that may be uninsurable under the law. (Ex. A, Sec. II.K.9.) The Trustee alleges in the Underlying Lawsuit that he seeks return of the monies the Defendants "improperly siphoned and received from the Debtors." (Ex. B, p. 6, ¶ 6.) Disgorgement of ill-gotten gains is not insurable loss under the law. Accordingly, the damages sought by the Trustee in the Underlying Lawsuit do not constitute "Loss" under the Policy, and RSUI has no duty to defend Defendants with respect to the Underlying Lawsuit.

## COUNT II

### RSUI Has No Duty to Indemnify Under the Policy

8

44.     RSUI incorporates by reference paragraphs 1-43 as if fully set forth in this count.

45.     An actual, justiciable controversy has arisen over whether the Policy requires RSUI to indemnify the Underlying Lawsuit.

46.     The Underlying Lawsuit is a Claim that arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, the Riverboat Matter.  In addition, the damages sought in the Underlying Lawsuit do not constitute insurable Loss under the Policy.

47.     If the Court determines that there is no duty to defend under Count I, the Court should also find that RSUI has no duty to indemnify Defendants.

**WHEREFORE** RSUI seeks a declaration:

A.     That the Underlying Lawsuit states a Claim made against Defendants.

B.     That the Specific Litigation Exclusion in the Policy applies to exclude coverage for the Underlying Lawsuit.

C.     That the damages sought in the Underlying Lawsuit do not constitute covered Loss under the Policy.

D.     That RSUI has no duty to defend or indemnify any Defendants for the Claim because the Claim does not fall within the coverage provided by the Policy.

E.     For any other relief that this Court deems just and equitable.

>                        Respectfully submitted,
>
>                        RSUI Indemnity Company
>
>                        By: /s/ Jeremy D. Kerman
>                        Counsel for Plaintiff, RSUI Indemnity Company

William P. Bila
Jeremy D. Kerman
WALKER WILCOX MATOUSEK LLP
One North Franklin
Suite 3200
Chicago, IL  60606-3610
Telephone: 312.244.6700
Fax: 312.244.6800
E-mail: jkerman@wwmlawyers.com

9