**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RSUI INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 17-CV-01690 |
| WORLDWIDE WAGERING, INC., | ) | |
| WILLIAM H. JOHNSTON, JR., | ) | Hon. Amy J. St. Eve |
| WILLIAM H. JOHNSTON, III, | ) | |
| STEVEN E. ANTON, F. PHILLIP | ) | |
| LANGLEY, LESTER H. MCKEEVER | ) | |
| and STEPHEN SWINDAL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants[1] William H. Johnston, Jr., William H. Johnston, III, Steven E. Anton, F. Phillip Langley, Lester H. McKeever, and Stephen Swindal (the "Directors"), along with World Wide Wagering, Inc. ("WWW"), have moved for summary judgment with regard to Plaintiff RSUI Indemnity Company's ("RSUI") duty to defend Defendants in the underlying litigation known as *Chatz v. World Wide Wagering, Inc., et. al.* (the "Underlying Litigation"). (R. 16, Defs.' Mem. of Law in Support of Mot. for Summ. J.) In response, Plaintiff has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) declaring (1) that it has no duty to defend or indemnify Defendants in the Underlying Litigation because the litigation is specifically excluded from the relevant policy or, in the alternative (2) that the damages sought in the Underlying Litigation do not constitute covered Loss under the relevant

---

[1] Defendants have also brought a counterclaim alleging breach of contract, but for purposes of this motion, the Court refers to WWW and individual Defendants as "Defendants" and to RSUI as Plaintiff.

policy. (R. 25, Pl.'s Mot. for J. on the Pleadings.) For the following reasons, the Court grants

Plaintiff's motion for judgment on the pleadings and denies Defendants' motion for summary

judgment.

## BACKGROUND

This case arises from Defendants' involvement in the Underlying Litigation and

Plaintiff's duty to defend Defendants in that lawsuit pursuant to Defendants' insurance policy

with Plaintiff. Plaintiff brought a two-count complaint seeking a declaration that it has no duty

to defend Defendants or indemnify them under their insurance policy. (R. 1, Compl.)

Defendants then brought a Counterclaim seeking a judgment that Plaintiff has a duty to defend

Defendants and alleging that Plaintiff has breached its contract by failing to defend Defendants

in the Underlying Litigation. (R. 14, Answer and Counterclaim.)

## I.     The Parties

WWW was a Delaware corporation with its principal place of business in Melrose Park,

Illinois. (R. 17, Defs.' Statement of Facts ¶ 1.) Johnston, Jr., Johnston, III, Anton, Langley,

McKeever, and Swindal all served as Directors of WWW, and they have been named as

individual defendants in the Underlying Litigation as a result of actions they took in their

capacities as Directors of WWW. (*Id.* ¶¶ 2-9.) Plaintiff is an insurance company domiciled in

New Hampshire with administrative offices in Georgia. (*Id.* ¶ 8.)

## II.    The Insurance Policy

Plaintiff issued to WWW an insurance policy (the "Policy") for the policy period April

17, 2014 to April 17, 2015, which the parties extended by endorsement for two successive annual

periods, through April 17, 2017. (*Id.* ¶ 13.) The Policy provides directors' and officers' liability

insurance to WWW and its directors and officers, and the Directors are "Insured Persons" under

2

the Policy. (*Id.* ¶¶ 15-16.) Similarly, WWW is the "Insured Organization" under the Policy.

(*Id.* ¶ 17.) The Policy contains a "Duty to Defend" provision that provides, "It shall be the right

and duty of the Insurer to defend any Claim against the Insured for which coverage applies under

this policy . . ." (*Id.* ¶ 18.) The Insuring Agreements of the policy provide that the Insurer

agrees:

> A. With the Insured Person that if a Claim for a Wrongful Act is first made against any
> Insured Person during the Policy Period and reported in accordance with . . . this
> policy, the Insurer will pay on behalf of such Insured Person all Loss such Insured
> Person is legally obligated to pay, except and to the extent that the Insured
> Organization is required or permitted to indemnify such Insured Persons.
>
> B. With the Insured Organization that if a Claim for a Wrongful Act is first made against
> any Insured Person during the Policy Period and reported . . . the Insurer will pay on
> behalf of the Insured Organization all Loss for which the Insured Organization is
> required or permitted to indemnify the Insured Person.
>
> C. With the Insured Organization that if a Claim for a Wrongful Act is first made against
> the Insured Organization during the Policy Period and reported . . . the Insurer will
> pay on behalf of the Insured Organization all Loss the Insured Organization is legally
> obligated to pay.

(R. 26, Pl.'s Statement of Facts ¶ 19.)

The Policy defines Claim as a "written demand for monetary or non-monetary relief" or a

"civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-

monetary relief," which is commenced by service of a complaint, return of an indictment, or

receipt of a notice of charges. (*Id.* ¶ 20.) The Policy defines Wrongful Act as "any actual or

alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any

actual or alleged employment practices wrongful act" by the Insured Organization or an "Insured

Person acting in his or her capacity as such and on behalf of the Insured Organization or any

matter claimed against them solely by reason of their status as an Insured Person." (*Id.* ¶ 21.)

The Policy defines "Loss" as damages, settlements, judgments (including pre- and post-judgment

interest on a covered judgment), and Defense Expenses.  (*Id.* ¶ 22.)  The definition of "Loss" also states that loss shall not include "matters that may be uninsurable under the law."  (*Id.*)

The Policy includes integration and merger clauses that provide that the terms can only be waived by written endorsement and that the policy "constitutes the entire agreement between the parties relating to this policy of insurance."  (Defs.' Statement of Facts ¶ 27.)  The Policy also includes a choice of law provision, which provides that the policy shall be "construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the Insured Organization or, in the case of matters pertaining to a Subsidiary, the laws of the state or jurisdiction of incorporation or organization thereof."  (*Id.* ¶ 28.)  WWW is the Insured Organization and it was organized under the laws of the State of Delaware.  (*Id.* ¶ 29.)

## III.    The Riverboat Matter

The parties endorsed the following exclusion to the Policy: "The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly, in whole or in part, the following litigation: Riverboat matter, claim #233457 on Chubb loss runs dated 4/8/2014."  (*Id.* ¶ 24.)  The Riverboat matter and the Chubb loss runs refers to a lawsuit known as *Empress Casino Joliet Corporation, et. al. v. Rod Blagojevich, et. al.*, Case No. 1:09-cv-03585 (the "Riverboat Matter"), which the plaintiffs, a group of riverboat casinos, filed in this District on June 12, 2009 and which named Rod Blagojevich, Friends of Blagojevich, John Johnston, Balmoral Racing Club, Maywood Park Trotting Association, Arlington Park Racecourse, Fairmount Park, and Hawthorn Racecourse as defendants.[2]  (*Id.* ¶¶ 25-26.)

---

[2] Defendants in this suit were either named in the Riverboat Matter or were owners and directors of the entities named as defendants in the Riverboat Matter.  (R. 1, Compl. ¶¶ 2-9.)

The plaintiffs in the Riverboat Matter alleged a RICO claim against Blagojevich, Friends of Blagojevich, Johnston, Balmoral Park, and Maywood Park and sought a constructive trust of funds received by the defendant racetracks pursuant to the 2006 and 2008 Racing Act. (Pl.'s Statement of Facts 8: 26.) Specifically, the plaintiffs alleged that John Johnston agreed to pay former Governor Blagojevich a bribe of $100,000 in exchange for his support of legislation that would require Illinois riverboat casinos to pay 3% of their revenue to the Illinois horseracing industry. (Compl. ¶ 17.) After a trial, the jury awarded approximately $78 million in damages against the defendants, and shortly thereafter, Defendants, who were liable for the damages in the Riverboat Matter, filed for bankruptcy protection. (*Id.* ¶¶ 18-19.)

## IV.  The Underlying Litigation

On December 16, 2016, Barry Chatz, in his capacity as Trustee of the Creditor Trust created by the plan of liquidation in the matter known as *In re: Balmoral Racing Club, Inc.,* Case No. 14-45711 (the "Underlying Litigation") in this District's Bankruptcy Court, filed an adversary complaint against the Directors and various related entities. (Defs.' Statement of Facts ¶ 30.) The Underlying Litigation was tendered to Plaintiff for coverage on December 20, 2016 and constitutes a Claim under the Policy. (*Id.* ¶ 23.) In the Underlying Litigation, Chatz alleged that Defendants "engaged in a deliberate scheme to manipulate [their debtor entities'] assets so as to conceal [those assets] from the Judgment Creditors and other creditors." (Compl. ¶ 20.) Chatz asserted several claims including counts for fraudulent transfers to Defendant shareholders and WWW,[3] preferential transfers to certain Defendants, breach of the fiduciary duties of care and loyalty, and a judgment piercing WWW's corporate veil and turning over its assets. All the claims in the Underlying Litigation related to Defendants' attempts to extract and transfer funds

---

[3] WWW was the holding company that owned the Maywood Park Trotting Association and the Balmoral Racing Club, which were subject to the Trustee's plan of liquidation. (Pl.'s Mot. for J. on the Pleadings 2.)

that were owed to various creditors as a result of the Riverboat Matter. (*Id.* ¶ 21.) The complaint accused the Directors and WWW of various acts, errors, and breaches of fiduciary duty, some of which relate to funds from the 2006 and 2008 Racing Act and others that do not. (Defs.' Statement of Facts ¶ 33.) The complaint also contained certain allegations regarding the Directors' and WWW's actions that predated the Riverboat Matter. (*Id.* ¶ 34.)

## V. Plaintiff's Denial of Coverage

Upon receipt of the complaint in the Underlying Litigation, Defendants tendered the complaint to Plaintiff for defense on December 20, 2016. (¶ 35.) On January 20, 2017, Plaintiff issued a denial of coverage letter in which it disclaimed any duty to defend or indemnify Defendants with respect to the Underlying Litigation. (*Id.* ¶ 36.) Defendants subsequently retained their own counsel to defend them in the Underlying Litigation. (*Id.* ¶ 38.) Defendants paid the required premiums under the Policy and provided timely notice of the Underlying Litigation to Plaintiff. (*Id.* ¶ 39.)

## LEGAL STANDARDS

## I. Federal Rule of Civil Procedure 56

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000) ("The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence on which a jury could reasonably find for the plaintiff."). In

6

ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. S. Door Cty. School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

## II.      Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 governs how the parties identify material facts and potential disputed material facts. "The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Local Rule 56.1(a) "requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Id.* at 218 (citation omitted). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'"

*Petty v. Chicago*, 754 F.3d 415, 420 (7th Cir. 2014) (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) requires the non-moving party to file a separate statement of additional facts. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Local Rule 56.1 statements and responses should identify the relevant admissible evidence supporting the material facts – not make factual or legal arguments. *See Zimmerman v. Doran*, 807 F.3d 178, 180 (7th Cir. 2015). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis*, 807 F.3d at 218 (quoting *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015).

### III.     Federal Rule of Civil Procedure 12(c)

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court may take judicial notice." *Archer Daniels Midland Co. v. Burlington Ins. Grp.*, 785 F.Supp.2d 722, 726 (N.D. Ill. 2011) (quotations and citations omitted).

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)

(quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014)).  As such, "the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."  *Id.* (citing *Fortres Grand Corp. v. Warner Bros. Entm't. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014)).  "A plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Yeadon Fabric Domes, LLC v. Roberts Environmental Control Corp.*, No. 15 CV 6679, 2016 WL 3940098, *1 (N.D. Ill. July 21, 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Put differently, "a 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).  Courts may also consider documents attached to the pleadings as long as the documents are referred to in the complaint and central to the plaintiff's claims.  *See Adams*, 742 F.3d at 729; Fed. R. Civ. P. 10(c).[4]  "All reasonable inferences are drawn in favor of the non-movant."  *Id.* (citing *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015)).  Ultimately, a court will grant a motion for judgment on the pleadings only if "no genuine issues of material fact remain to be resolved and . . . the [moving party] is entitled to judgment as a matter of law."  *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 2012).

## ANALYSIS

### I.    Specific Litigation Exclusion

Plaintiff first argues that it has no duty to defend Defendants in the Underlying Litigation because the Policy specifically excluded litigation arising out of the Riverboat Matter, and the

---

[4] Because Plaintiff attaches the complaint in the Underlying Litigation and the Policy to its Complaint and these documents are central to its claim, the Court may consider these attachments in ruling on the present motion.

Underlying Litigation arises out of the Riverboat Matter. Defendants argue[5] in response that Plaintiff has a duty to defend them in the Underlying Litigation because the Underlying Litigation involves different parties and claims than those involved in the Riverboat Matter. Specifically, Defendants argue that although some of the parties and funds at issue are the same in both cases, the Riverboat Matter involved a bribe of Governor Blagojevich, while the Underlying Litigation involves the corporate mismanagement of WWW.

Under Delaware law,[6] "[i]nsurance contracts, like all contracts, are construed as a whole, to give effect to the intentions of the parties." *AT & T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1008 (Del. 2007). Courts analyzing whether an insurance company has a duty to defend an insured against a third party must "look to the allegations of the underlying third party complaint to assess whether that complaint alleges a risk within the coverage of the policy." *First Am. Title Ins. Co. v. MacLaren, L.L.C.*, No. 10-CV-363 GMS, 2012 WL 769601, at *4–5 (D. Del. Mar. 9, 2012) (quoting *Cont'l Cas. Co. v. Alexis I. DuPont Sch. Dist.*, 317 A.2d 101, 103 (Del. 1974)). "Even if coverage were established, an insurer will be excused from its duty to defend if, as a matter of law, policy exclusions or exemptions apply." *Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 526 (D. Del. 2001), *aff'd*, No. 02-1402, 2003 WL 146486 (3d Cir. Jan. 21, 2003) (citations omitted). The insurer has the burden of establishing that policy exclusions apply in a particular case, and that they are subject to no other reasonable interpretation. *Id.* (citing *Deakyne v. Selective Ins. Co. of America,* 728

---

[5] Defendants first argue that the Underlying Litigation represents a risk that is covered by the insuring provisions in the Policy. Plaintiff does not dispute that the Underlying Litigation would be covered by the insuring provisions in the Policy, and instead argues that the Underlying Litigation is not covered because it falls with the Specific Litigation Exclusion. Accordingly, the Court need not address Defendants' arguments regarding the insuring provisions.

[6] Although Plaintiff initially cited to Illinois law in its Motion for Judgment on the Pleadings, the parties do not dispute that the Policy dictates that Delaware law, which is WWW's place of incorporation, applies in this case. (R. 27, Pl.'s Resp. 3 n. 2.)

A.2d 569, 571 (Del. Super. Ct. 1997). "[A]n exclusion clause in an insurance contract is construed strictly to give the interpretation most beneficial to the insured." *Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co. of Canada*, 2007 WL 1811265, at *11 (Del. Super. Ct. June 20, 2007).

Accordingly, in order to avoid the duty to defend, the insurer must demonstrate that the allegations of the underlying complaint are "solely and entirely" within specific and unambiguous exclusions from coverage. *Brosnahan*, 137 F. Supp. 2d at 526 (citations omitted). A term within the contract is not ambiguous, however, merely because "the parties disagree on the meaning of the term . . . [r]ather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible to different interpretations or may have two or more meanings. *AT & T Corp.*, 918 A.2d at 1108 (quotations omitted). "The determination as to whether a duty to defend exists is objective, in that the court should seek to ascertain not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it to mean." *MacLaren*, 2012 WL 769601, at *4–5 (quotations and citations omitted).

Applying these rules, Delaware courts have found that insurers have no duty to defend where the relevant insurance policy includes a broad and unambiguous exclusion provision. In *AT & T Corp. v. Clarendon Am. Ins. Co.*, No. CIV.A.04C-11-167(JRJ, 2006 WL 1382268, at *17-18 (Del. Super. Ct. Apr. 13, 2006), *rev'd in part sub nom. AT & T Corp.*, 918 A.2d 1104,[7] for example, the insurer claimed it had no duty to defend the insured in several shareholder suits in part because the policy's prior litigation exclusion barred coverage. The prior litigation

---

[7] The Delaware Supreme Court reversed the trial court's decision because the trial court improperly construed the term "Claim" and thus did not analyze whether the exclusion provision covered each individual count in the underlying lawsuit. *AT & T Corp.*, 918 A.2d 1104. The Court did not otherwise evaluate the trial court's application of the exclusion provision. *Id.*

exclusion provided that the insurer was not obligated to offer coverage for any loss "alleging, arising out of, based upon or attributable to any pending or prior litigation . . . alleging or derived from the same or essentially the same facts." *Id*. at *18. The court analyzed the language of the exclusion provision and found that its language was "plain and unambiguous." *Id.* After comparing the allegations in the lawsuits, the court found that the shareholder suits were based upon and arose out of the same facts. *Id.* The court reasoned that the shareholder suits alleged that the earlier litigation led to the insured's actions at issue in the shareholder suits, and as such, the shareholder suits had a "common nexus" with the earlier litigation and involved many of the same facts, events, and transactions. *Id.* at *19. Accordingly, the court found that the insurer had no duty to defend the insured because the shareholder suits fell within the scope of the exclusion provision. *Id. See also Liggett Grp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024, 1032 (Del. 2002) (upholding unambiguous exclusion provisions and finding no duty to defend).

Courts in other jurisdictions have similarly found that litigation exclusion provisions apply where the underlying litigation arises out of, at least in part, facts and allegations that were included in the prior litigation described in the exclusion provision.[8] In *Darwin Nat. Assur. Co. v. Westport Ins. Corp.*, No. 13-CV-02076 PKC, 2015 WL 1475887, at *4-5 (E.D.N.Y. Mar. 31, 2015), for example, an insurer sought a judgment that it had no duty to defend an insured-municipality in 2009 litigation with the Catholic Church due to an exclusion provision relating to 1996 litigation in which the Catholic Church sued the municipality to get property re-zoned. The provision excluded coverage for all claims for wrongful acts "based upon, arising out of, resulting from, or in any way involving the same or related facts, circumstances, [or] situations. .

---

[8] While these courts did not apply Delaware law and thus their decisions are not controlling precedent, the Court finds their analysis of similar exclusion provisions persuasive.

." as the 2006 litigation. In interpreting the policy, the court determined that "'arising out of' and 'based upon' unambiguously require[d] a causal relationship between the claims in the [current litigation] and the wrongful acts alleged [in the prior litigation] while 'in any way involving' simply requires some kind of connection or relationship." *Id.* at *12-13. The court then found that, due to the litigation exclusion provision, the insurer had no duty to defend the municipality in the 2009 litigation. *Id.* at *13. The court explained that the 2009 litigation arose out of and was causally connected to the 1996 litigation because, while some of the allegations related to the municipality's conduct subsequent to the 1996 litigation, the complaint in the 2009 litigation alleged a fifteen-year discriminatory campaign by the municipality to prevent the Church from acquiring the property at issue and the municipality's more recent conduct was still part of the its larger discriminatory scheme. *Id.* at *13-14.

Similarly, in *The One James Plaza Condo. Ass'n, Inc. v. Rsui Grp., Inc.*, No. CV 15-294, 2015 WL 7760179, at *5 (D.N.J. Dec. 2, 2015), analyzing an RSUI exclusion provision much like the provision at issue here, the court found that RSUI had no duty to defend an insured condo association due to the insurance policy's exclusion provision. The Court determined that the current lawsuit arose from the same set of factual allegations as the excluded lawsuit and involved the same parties and similar claims, noting that both actions alleged the commingling of assets, improper use of funds, and the illegal renting of condo units. *Id.* at *6. The court reasoned that the pleadings in the underlying actions "need not have been identical to preclude coverage" and found that the substantial overlap of the factual allegations was sufficient for RSUI to invoke the exclusion provision. *Id. See also Prop. I.D. Corp. v. Greenwich Ins. Co.*, 377 F. App'x 648, 649 (9th Cir. 2010) (upholding finding of no duty to defend although new litigation contained some new allegations because new litigation was still "based upon" the

13

ongoing employment dispute described in exclusion provision); *Zunenshine v. Exec. Risk Indem., Inc.*, No. 97 CIV. 5525 (MBM), 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998), *aff'd*, 182 F.3d 902 (2d Cir. 1999) (finding insurer had no duty to defend due to exclusion provision because facts of current lawsuit arose out of same facts as excluded litigation and nothing in the policy "require[d] that a claim involve precisely the same parties, legal theories, [w]rongful act[s], or requests for relief" to apply).

In this case, the exclusion in the Policy provides: "The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly, in whole or in part, the following litigation: Riverboat matter, claim #233457."  (Defs.' Statement of Facts ¶ 24.) This provision is clear, unambiguous, and broad, and it plainly states that Plaintiff is not liable for any claims arising out of or based upon, *in whole or in part*, the Riverboat Matter. Defendants argue that the Underlying Litigation does not fall within the scope of the exclusion provision because while the Underlying Litigation involves some facts and allegations that are related to the Riverboat Matter, it also contains some allegations and relates to some funds that are not connected to the Riverboat Matter.  This argument, however, fails to recognize that to fall within the exclusion provision, each allegation and each fact need not arise from or connect directly to the Riverboat Matter.  Instead, the claims in the Underlying Litigation only need to arise out of the Riverboat Matter *in part*.

Here, the claims in the Underlying Litigation, at least in part, arise from the Riverboat Matter.  As discussed above, in the Riverboat Matter, a jury found certain individual Defendants and the entities they controlled liable for approximately $78 million in damages as a result of bribes they paid former Governor Blagojevich in exchange for his support of the Racing Act

14

legislation that required the riverboat casinos to make payments to the horseracing industry. The complaint in the Underlying Litigation alleges that, Defendants, knowing that their entities were at risk of a massive judgment in the Riverboat Matter, engaged in a deliberate scheme to manipulate their entities' assets and conceal them from their creditors in the Riverboat Matter. (Compl. ¶ 20.) Specifically, the complaint alleges that the Defendants "raided" their entities and fraudulently transferred the entities' funds to enrich themselves in breach of their fiduciary duties, all in anticipation of a judgment in the Riverboat Matter, which they had no intention of satisfying. (*Id.*; *see* Ex. B. Riverboat Matter Complaint ¶¶ 1-7.) Given these allegations, it is clear that Defendants' fraudulent scheme to transfer assets, as alleged in the Underlying Litigation, was a direct effort to avoid paying the judgment in the Riverboat Matter and to shield and plunder the assets of their entities before creditors from the Riverboat Matter could reach them. These essential allegations, which form the basis of each count in the Underlying Litigation, clearly arise, at least in part, from the Riverboat Matter and the judgment in that case.

Here, as in *AT & T Corporation*, the facts and allegations in the two lawsuits have a "common nexus"—they both center on Defendants' efforts to gain additional funds through bribery and their subsequent efforts to illegally transfer those funds once litigation exposed that bribery. 2006 WL 1382268, at *17-18. Indeed, like in *Darwin*, where the court analyzed a similar exclusion provision, the allegations here have a directly causal relationship. 2015 WL 1475887, at *4-5. If Defendants and their entities had not been liable for the massive judgment in the Riverboat Matter, they would not have engaged in a scheme to fraudulently transfer their assets in breach of their fiduciary duties. The Riverboat Matter caused Defendants to enter into the scheme alleged in the Underlying Litigation. Finally, as discussed above, Defendants' argument that the Underlying Litigation involves slightly different allegations, conduct, and the

15

use of different funds is unavailing. As the court explained in *The One James*, the pleadings in the two actions "need not have been identical to preclude coverage." 2015 WL 7760179, at *5; *see also     Zunenshine*, 1998 WL 483475, at *5 (noting that nothing in the exclusion provision "require[d] that a claim involve precisely the same parties, legal theories, [w]rongful act[s], or requests for relief" to apply). The same principle applies here. The exclusion provision in the Policy did not require that litigation be identical to the Riverboat Matter to be excluded from coverage, litigation merely had to arise from or be based in part on the Riverboat Matter, and here, the Underlying Litigation meets that criteria.

Accordingly, the Court grants Plaintiff's motion for judgment on the pleadings and finds that Plaintiff has no duty to defend or indemnify Defendants in the Underlying Litigation and that it has thus not breached its contract with Defendants.

## II.    Uninsurable Loss

Plaintiff next argues that it has no duty to defend Defendants in the Underlying Litigation because all monetary relief sought in the Underlying Litigation constitutes ill-gotten gains to the bankruptcy estate, and is therefore uninsurable Loss under the law. Because the Court has determined that Plaintiff has no duty to defend or indemnify Defendants in the Underlying Litigation due to the litigation exclusion provision, the Court need not address Plaintiff's arguments regarding ill-gotten gains.[9]

---

[9] Similarly, because the Court has found that Plaintiff has no duty to defend Defendants, Defendants' arguments regarding their right to control their own defense are moot. Since Plaintiff is not obligated to defend Defendants, Defendants are free to control their own defense and hire attorneys of their choosing.

16

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion for summary judgment and grants Plaintiff's motion for judgment on the pleadings.


**DATED:** July 17, 2017                    **ENTERED**

AMY J. ST. EVE
United States District Court Judge