IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RSUI INDEMNITY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 17-CV-01690 |
| WORLDWIDE WAGERING, INC., | ) |
| WILLIAM H. JOHNSTON, JR., | ) Hon. Amy J. St. Eve |
| WILLIAM H. JOHNSTON, III, | ) |
| STEVEN E. ANTON, F. PHILLIP | ) |
| LANGLEY, LESTER H. MCKEEVER | ) |
| and STEPHEN SWINDAL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 17, 2017, the Court granted Plaintiff RSUI Indemnity Company's ("RSUI") motion for judgment on the pleadings and denied Defendants'[1] William H. Johnston, Jr., William H. Johnston, III, Steven E. Anton, F. Phillip Langley, Lester H. McKeever, and Stephen Swindal (the "Directors"), along with World Wide Wagering, Inc. ("WWW"), motion for summary judgment, finding that Plaintiff had no duty to defend Defendants in the underlying litigation known as *Chatz v. World Wide Wagering, Inc., et. al.* (the "Underlying Litigation"). (R. 30, July 17, 2017 Opinion, hereinafter the "Opinion.") Defendants have now filed the present motion for reconsideration pursuant Federal Rule of Civil Procedure 59(e). For the following reasons, the Court denies Defendants' motion for reconsideration.

---

[1] Defendants have also brought a counterclaim alleging breach of contract, but for purposes of this motion, the Court refers to WWW and individual Defendants as "Defendants" and to RSUI as Plaintiff.

1

**BACKGROUND**

This case arises from Defendants' involvement in the Underlying Litigation and Plaintiff's duty to defend Defendants in that lawsuit pursuant to Defendants' insurance policy (the "Policy") with Plaintiff. The Court presumes the parties' familiarity with the background of this case, but briefly recites the background relevant to this motion.

In its earlier opinion, the Court found that Plaintiff had no duty to defend Defendants in the Underlying Litigation due to the Specific Litigation Exclusion in the parties' the Policy. The Litigation Exclusion states: "The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly, in whole or in part, the following litigation: Riverboat matter, claim #233457 on Chubb loss runs dated 4/8/2014." (R. 17, Defs.' Statement of Facts ¶ 24.) The Riverboat matter refers to a lawsuit known as *Empress Casino Joliet Corporation, et. al. v. Rod Blagojevich, et. al.*, Case No. 1:09-cv-03585 (the "Riverboat Matter"), which the plaintiffs, a group of riverboat casinos, filed in this District against several defendants.[2] (*Id.* ¶¶ 25-26.) The plaintiffs in the Riverboat Matter alleged a RICO claim against the defendants due to bribes the racetracks paid and sought a constructive trust of funds the defendant racetracks received pursuant to the 2006 and 2008 Racing Act. (Pl.'s Statement of Facts 8: 26.) After a trial, the jury awarded approximately $78 million in damages, and shortly thereafter, Defendants, who were liable for the damages in the Riverboat Matter, filed for bankruptcy protection. (*Id.* ¶¶ 18-19.)

On December 16, 2016, Barry Chatz, in his capacity as Trustee of the Creditor Trust created by the plan of liquidation in the matter known as *In re: Balmoral Racing Club, Inc.,* Case

---

[2] Defendants in this suit were either named in the Riverboat Matter or were owners and directors of the racetrack entities named as defendants in the Riverboat Matter. (R. 1, Compl. ¶¶ 2-9.)

No. 14-45711 (the "Underlying Litigation") in this District's Bankruptcy Court, filed an adversary complaint against the Directors and various related entities. (Defs.' Statement of Facts ¶ 30.) The Underlying Litigation constitutes a Claim under the Policy. (*Id.* ¶ 23.) In the Underlying Litigation, Chatz alleged that Defendants "engaged in a deliberate scheme to manipulate [their debtor entities'] assets so as to conceal [those assets] from the Judgment Creditors and other creditors." (Compl. ¶ 20.) All the claims in the Underlying Litigation related to Defendants' attempts to extract and transfer funds that were owed to various creditors as a result of the Riverboat Matter. (*Id.* ¶ 21.) The complaint accused the Directors and WWW of various acts, errors, and breaches of fiduciary duty, some of which relate to funds from the 2006 and 2008 Racing Act and others that do not. (Defs.' Statement of Facts ¶ 33.) The complaint also contained certain allegations regarding the Directors' and WWW's actions that predated the Riverboat Matter. (*Id.* ¶ 34.)

In its Opinion, the Court found that Plaintiff did not have a duty to defend Defendants in the Underlying Litigation because the litigation exclusion was clear, unambiguous, and broad, and it stated that Plaintiff was not liable for any claims arising out of or based upon, in whole or in part, the Riverboat Matter. The Court explained that to fall within the exclusion provision, each allegation and each fact in the Underlying Litigation need not arise from or connect directly to the Riverboat Matter. Instead, the claims in the Underlying Litigation only need to arise out of the Riverboat Matter in part. The Court found that the claims in the Underlying Litigation arose, at least in part, from the Riverboat matter because the allegations and potential of a large judgment against the defendants in the Riverboat Matter caused Defendants to engage in a scheme to manipulate their entities' assets and conceal them from their creditors in the Riverboat Matter. (Compl. ¶ 20.)

## LEGAL STANDARDS

The Court may a grant Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 813 (citation and internal quotation marks omitted). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id.* (citation and internal quotation marks omitted). Additionally, "'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

The party moving for reconsideration bears the burden of establishing that the Court should reverse its prior judgment. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). To succeed on a Rule 59(e) motion, the movant must "clearly establish one of the aforementioned grounds for relief." *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). The decision to grant a Rule 59(e) motion lies in the sound discretion of this Court, and its ruling is reviewed deferentially and will only be disturbed upon a showing that the Court abused that discretion. *See Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991).

**ANALYSIS**

Defendants argue that the Court's reasoning in the Opinion was flawed because (1) the Court relied on two Delaware cases that did not apply Delaware law; (2) one of the cases the Court relied upon in its Opinion was reversed and thus the Court's reliance was misplaced; and (3) the Delaware Supreme Court would find that Plaintiff owed Defendants a duty to defend. The Court addresses each argument in turn.

**I.     The Court's Reliance on *Faraday* and *Clarendon I***

Defendants first argue that, although Delaware law governs this dispute, the Court improperly relied upon two Delaware cases in which the courts were applying other states' laws. Defendants' argument is unavailing. In the Opinion, the Court cited *AT & T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1008 (Del. 2007), for the principle that "under Delaware law, [i]nsurance contracts, like all contracts, are construed as a whole, to give effect to the intentions of the parties." (Opinion 10.) The *Faraday* court cited to a Delaware Supreme Court case, in which the court was analyzing Delaware law, for that proposition regarding general contract interpretation. *See id.* (citing *Nw. Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996). Regardless of whether the rest of the *Faraday* court's opinion applied the law of another state, given the *Faraday* court's citation to a Delaware Supreme Court case, the proposition for which the Court cited *Faraday* was a correct statement Delaware law, as several other Delaware courts have confirmed. *See, e.g.*, *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (explaining that under Delaware Law courts interpreting a contract "will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole") (citation and quotation omitted); *Stoms v. Federated Serv. Ins. Co.*, 125 A.3d 1102, 1107 (Del. 2015) (explaining that under Delaware law, insurance contract must be read in

5

context of the whole policy); *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (court must give priority to parties' intentions and interpret agreement as a whole).

The Court's only other substantive citation to *Faraday* was for the proposition that a "contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible to different interpretations." (Opinion 11) (citing *Faraday*, 918 A.2d at 1108). Again, for that proposition, the *Faraday* court cited to a Delaware Supreme Court case, in which the court was analyzing Delaware law, and again, this proposition was a correct statement of Delaware contract law. *Faraday*, 918 A.2d at 1108 (citing *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (under Delaware law, "a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible to different interpretations"). Accordingly, the Court's reliance on *Faraday* does not warrant reconsideration of its decision.

Defendants argue that the Court's reliance on *AT & T Corp. v. Clarendon Am. Ins. Co.*, No. CIV.A.04C-11-167(JRJ, 2006 WL 1382268, at *17-18 (Del. Super. Ct. Apr. 13, 2006), *rev'd in part sub nom. AT & T Corp.*, 918 A.2d 1104 (hereinafter *Clarendon I*) was similarly misplaced because the court in that case relied upon New York, New Jersey, and California law. Again, Defendants' argument fails. In its Opinion, the Court did not state that the *Clarendon I* court applied Delaware law, and instead discussed *Clarendon I* as an example of a Delaware court interpreting a broad, unambiguous exclusion provision according to general contract interpretation principles. Indeed, the *Clarendon I* court itself noted that the rules of insurance contract interpretation are the same in New York, New Jersey, California, *and* Delaware. *Id.* at *9 ("As a general rule, these [New York, New Jersey, California, and Delaware] courts interpret insurance policy language according to the general contract interpretation."). The court also

6

cited to Delaware law, along with New York, New Jersey, and California law, for many of the principles of interpretation upon which it relied. *Id.* at *9 n. 105, 106, 107, 109, 110, 111, 116, 118, 119, 120, 127, 128, 129, 130. Given that the *Clarendon I* court grounded its reasoning in Delaware law, as well as the laws of other states, the Court's reliance on *Clarendon I* was proper. Moreover, in addition to citing to *Clarendon I*, the Court also relied upon another Delaware case,[3] and several cases from other states analyzing similar provisions,[4] thus, even if the Court's reliance on *Clarendon I* had been misplaced, the Court's decision was based on other appropriate cases.

Accordingly, the Court's reliance on cases that applied non-Delaware law does not warrant reconsideration.

## II. The Court's Reliance on a Reversed Case—*Clarendon I*

Defendants next argue that the Court's reliance on *Clarendon I* was also misplaced because that case was reversed. As noted above, the Court relied on several cases besides *Clarendon I*, both from Delaware and other jurisdictions, in reaching its decision, and accordingly, even if the Court's reliance on *Clarendon I* had been misplaced, that was not the only basis for the Court's decision and would not change the Court's reasoning. Nevertheless, the Court's discussion of *Clarendon I*, despite its reversal, was not improper.

In *Clarendon I*, the insurer claimed it had no duty to defend the insured in several shareholder suits in part because the policy's prior litigation exclusion barred coverage. 2006 WL 1382268, at *17-18. The court analyzed the language of the exclusion provision, which

---

[3] *See Liggett Grp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024, 1032 (Del. 2002).
[4] *See Darwin Nat. Assur. Co. v. Westport Ins. Corp.*, No. 13-CV-02076 PKC, 2015 WL 1475887, at *4-5 (E.D.N.Y. Mar. 31, 2015); *The One James Plaza Condo. Ass'n, Inc. v. Rsui Grp., Inc.*, No. CV 15-294, 2015 WL 7760179, at *5 (D.N.J. Dec. 2, 2015); *Prop. I.D. Corp. v. Greenwich Ins. Co.*, 377 F. App'x 648, 649 (9th Cir. 2010); *Zunenshine v. Exec. Risk Indem., Inc.*, No. 97 CIV. 5525 (MBM), 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998).

7

excluded coverage for loss "arising out of . . . any pending or prior litigation," and found that its language was "plain and unambiguous." *Id*. at *18. The court found that the shareholder suits were based upon and arose out of the same facts because the suits alleged that the earlier litigation led to the insured's actions at issue in the shareholder suits, and as such, the shareholder suits had a "common nexus" with the earlier litigation and involved many of the same facts, events, and transactions. *Id.* at *19. Accordingly, the court found that the insurer had no duty to defend the insured. *Id.*

In its Opinion, the Court noted the reversal, stating in a footnote: "The Delaware Supreme Court reversed the trial court's decision because the trial court improperly construed the term "Claim" and thus did not analyze whether the exclusion provision covered each individual count in the underlying lawsuit. *AT & T Corp.*,[5] 918 A.2d 1104. The Court did not otherwise evaluate the trial court's application of the exclusion provision. *Id.*" (Opinion 11 n. 7.) This statement of law was correct. In *Faraday*, the court reversed *Clarendon I* because the *Clarendon I* court improperly considered each underlying claim and each underlying lawsuit to be one "claim." *Id.* at 1105. The court held that each pleaded cause of action, not just each lawsuit, could constitute a separate claim under the insurance policy. *Id.* The court noted, however, that if "several of the causes of action ar[o]se out of the same underlying wrongful conduct" they could still be deemed a single "claim." *Id.* at 1109. Since neither the parties nor the trial court addressed this point, the court remanded for the trial court to determine how many separate claims were at issue. *Id.* On remand, the *Clarendon II* court refused to determine how many claims there were or whether the exclusion applied, and instead decided to "let the jury decide how many separate claims" there were in the underlying language. *AT&T v. Clarendon*

---

[5] Although the Court referred to the case overruling *Clarendon I* by the short citation *AT & T Corp.* in its earlier Opinion, the Court will refer to that case as *Faraday* in this opinion for the sake of clarity.

*Am. Ins. Co.*, No. CIV.A. 04C-11-167-JR, 2008 WL 250550, at *2 (Del. Super. Ct. Jan. 17, 2008).

Importantly, neither the Delaware Supreme Court nor the *Clarendon II* court found that the *Clarendon I* court improperly analyzed the exclusion provision or that its "common nexus" analysis was incorrect. As a result, the *Clarendon I* court's reasoning regarding the scope of the exclusion provision still stands and it is that holding and reasoning that the Court found persuasive in its Opinion. Accordingly, the Court's reliance on *Clarenden I*, despite its reversal, does not warrant granting Defendants' motion for reconsideration.

### III. Plaintiff's Duty to Defend

Lastly, Defendants argue that the Court's Opinion was incorrect because the Delaware Supreme Court would find that Plaintiff owed Defendant a duty to defend. Specifically, Defendants argue that the Policy, which must be construed as a whole, uses the phrase "in whole or in part" four times, and two of those provisions have exceptions, which Defendants argue suggests that the parties did not intend for the phrase "in whole or in part" to have an expansive meaning.

As an initial matter, Defendants' argument about the interpretation of "in whole or in part" fails because Defendants did not make this argument, despite extensive briefing, in either their Motion for Summary Judgment (R. 16) or their Response to Plaintiff's Motion for Judgment on the Pleadings (R. 28). *Miller*, 683 F.3d at 813 (citation and internal quotation marks omitted) (Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment"); *Flint v. City of Belvidere*, No. 11 C 50255, 2014 WL 11397797, at *1 (N.D. Ill. June 17, 2014) (denying motion to dismiss because of new arguments and noting that summary judgment is not a

"practice run").[6]

      Even if Defendants could make this argument regarding the interpretation of the language in the Policy at this procedural stage, they would still fail. In its Opinion, the Court correctly determined that, even if Defendants claims were covered by the Policy, the exclusion provision excluded coverage for the Underlying Litigation. *Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 526 (D. Del. 2001), *aff'd*, No. 02-1402, 2003 WL 146486 (3d Cir. Jan. 21, 2003) (citations omitted) ("Even if coverage were established, an insurer will be excused from its duty to defend if, as a matter of law, policy exclusions or exemptions apply.") The Court determined that the language in the exclusion provision plainly and unambiguously stated that Plaintiff was not liable for any claims arising out of or based upon, in whole or in part, the Riverboat Matter and that the claims in the Underlying Litigation, at least in part, arose from the Riverboat Matter. Specifically, the Court found that Defendants' fraudulent scheme to transfer assets, as alleged in the Underlying Litigation, was a "direct effort to avoid paying the judgment in the Riverboat Matter and to shield and plunder the assets of their entities before creditors from the Riverboat Matter could reach them." (Opinion 15.) The Court explained that these allegations, which formed the basis of each count in the Underlying Litigation, clearly arose, at least in part, from the Riverboat Matter and the judgment in that case. Accordingly, under Delaware contract interpretation principles, the plain language of exclusion provision required that the Underlying Litigation be excluded from coverage. The fact that the Policy contains exceptions to other exclusion provisions containing the phrase "in whole or in part" does not

---

[6] Defendants argue in their Reply brief that they did not make this argument earlier because Plaintiff had not raised the "in whole or in part" language in their initial briefing. Despite this argument, the language "in whole or in part" was a key component of the exclusion provision that was directly at issue in this litigation, and as such, Defendants were well-positioned to make arguments regarding that language in their briefing.

10

change this finding.

Accordingly, the Court denies Defendants' motion for reconsideration.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for reconsideration


**DATED:** October 10, 2017

**ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge